# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| GRAHAM STROUSE | : | CIVIL ACTION |
| --- | --- | --- |
| v. | : | No. 07-4514 |
| MICHAEL J. ASTRUE,<br>Commissioner of Social Security Administration | : | |

## MEMORANDUM

Juan R. Sánchez, J.                                                                                   March 19, 2010

      Plaintiff Graham Strouse seeks review of the Social Security Administration (SSA) Commissioner's denial of his claims for Social Security Income (SSI) and Disability Insurance Benefits (DIB). This Court agrees with Strouse's second argument, alleging the Administrative Law Judge (ALJ) erred in failing to include all of Strouse's mental impairments in the hypothetical question posed to the Vocational Expert (VE). Strouse's remaining objections are without merit. Therefore, this Court approves and adopts the Report and Recommendation (Report) of United States Magistrate Judge Linda K. Caracappa, and shall remand this case to the Commissioner.

**FACTS**

      Strouse filed an application for SSI and DIB on July 1, 2004, alleging disability since January 2, 2002, caused by depression, anxiety disorders, Asperger's syndrome, and aneurisms. On October 1, 2004, his SSI application was denied by the SSA. Strouse appealed, and an ALJ held a hearing on October 20, 2005. On January 26, 2006, the ALJ denied Strouse's claim. The Social Security Appeals Council denied Strouse's request for review on August 24, 2007. Strouse timely filed this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the SSA's final decision. Pursuant

to Local Rule of Civil Procedure 72.1(II)(a), this Court referred his appeal to United States Magistrate Judge Linda K. Caracappa. In her Report, Judge Caracappa recommended remanding this case to the ALJ because of the ALJ's failure to include Strouse's moderate difficulties in maintaining concentration, persistence, or pace in the hypothetical question posed to the VE. Both Strouse and the Commissioner filed timely objections to the Report.

Strouse is a 36-year-old college graduate whose work history includes employment as a telemarketer, reporter, video store clerk, and as an automotive service clerk. Since January 2, 2002, the alleged disability onset date, Strouse has been admitted to several medical facilities and has been evaluated by multiple doctors and mental health professionals.

On January 17, 2002, Strouse was admitted to Sarasota Memorial Hospital for an accidental overdose after ingesting Sominex, a prescription sleeping aid. He was released the same day. Strouse was again admitted to Sarasota Memorial on March 27, 2003, for suicidal thoughts, drug abuse, and anxiety. On March 29, 2003, he was transferred to The Harbor Behavioral Care Institute for two days, where he was diagnosed with atypical bipolar disorder. Strouse received emergency care at Doylestown Hospital on August 27, 2003, for severe chronic depression, and he was noticeably intoxicated when he checked in to the hospital. Strouse was admitted to Doylestown Hospital again on September 4, 2003, for recurrent significant depression and abuse of benzodiazepine, an anti-anxiety prescription medication. On both occasions, Strouse refused further inpatient treatment.

From September 4, 2003, to September 18, 2003, Strouse was hospitalized at the Horsham Clinic for social anxiety disorder, generalized anxiety disorder, panic disorder, and benzodiazepine abuse. While there, Strouse admitted he had been abusing benzodiazepine for approximately ten

2

years. Strouse was subsequently hospitalized at the University of Pennsylvania Hospital from November 13, 2003, to November 24, 2003, where he was diagnosed as suffering from a developmental neuropsychiatric disorder, cognitive impairment with associated attentional problems, and abuse of the drugs ephedra and clonazepam. On December 4, 2003, doctors at the Lenape Valley Foundation Partial Hospital Program diagnosed Strouse with major depression, drug abuse, pervasive developmental disorder, learning disorders, and peripheral neuropathy. On April 15, 2004, Strouse received emergency treatment for an intentional overdose.

On September 24, 2004, the State Agency Medical Examiner, Dr. John Gavazzi, examined Strouse to consider whether he was able to perform meaningful work. Dr. Gavazzi concluded Strouse was able to meet the basic mental demands of competitive work on a sustained basis, despite limitations resulting from his mental impairments. On November 30, 2004, Dr. Christian Kohler, a psychiatrist for the University of Pennsylvania Health System, conducted a psychiatric evaluation of Strouse and found no evidence Strouse had depression or psychotic, suicidal, or homicidal thoughts. Instead, Dr. Kohler found Strouse had symptoms of benzodiazepine abuse and stimulant abuse exacerbated by a developmental disorder. Strouse was treated again in the emergency room for alcohol intoxication on January 21, 2005.

**DISCUSSION**

This Court exercises *de novo* review over the portions of the Magistrate Judge's Report to which the parties object. 28 U.S.C. § 636(b)(1)(C). This Court is bound by the ALJ's factual findings to the extent those findings are supported by substantial record evidence. 42 U.S.C. § 405(g); *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Substantial evidence is "more than a mere scintilla but may be somewhat less than

a preponderance of the evidence." *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

A person claiming entitlement to DIB or SSI must demonstrate he has a disability by producing evidence showing an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A person is unable to engage in any substantial gainful activity if his physical or mental impairments "are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." § 423(d)(2)(A).

The SSA uses a five-step evaluation process to determine whether a claimant is disabled. *Ramirez v. Barnhart*, 372 F.3d 546, 550 (3d Cir. 2004). A claimant is not considered disabled if: (1) he is currently engaged in substantial gainful work activity; (2) he does not have a severe medically determinable physical or mental impairment which meets the duration requirement of 20 C.F.R. § 404.1509; (3) he does not have an impairment that meets or equals one of those listed in Appendix 1 of Subpart P, 20 C.F.R. § 404; (4) if, despite this impairment, he can still do past relevant work, based on the Commissioner's assessment of the claimant's residual functional capacity [RFC]; or (5) if, based on the Commissioner's assessment of the claimant's RFC, age, education, and work experience, the claimant can make an adjustment to perform other jobs available in the national economy. 20 C.F.R. § 404.1520(a)(4). If the Commissioner cannot determine whether a claimant is disabled at any step, the Commissioner will proceed to the next step.

*Ramirez*, 372 F.3d at 550. After applying the five-step sequential evaluation process to Strouse's claim, the ALJ determined: (1) Strouse has not engaged in substantial gainful work activity since January 2, 2002, his alleged disability onset date; (2) Strouse's anxiety, major depressive disorder, developmental disorder, benzodiazepine abuse, and stimulant abuse is "severe" based on the requirements of 20 C.F.R. § 416.920(c);[1] (3) Strouse's medically determinable impairments do not meet or equal one of the listed impairments in 20 C.F.R. § 404, App. 1, Subpart P; (4) Strouse's residual functional capacity is limited to simple and routine one to two step tasks performed in a low-stress environment with limited contact with the public and co-workers; and (5) Strouse is unable to perform any past relevant work; however, he can perform some jobs in the national economy. The ALJ found Strouse is able to perform work as a cleaner or packer. The ALJ thus determined Strouse was ineligible for SSI and DIB.

In his appeal to this Court, Strouse objects to the ALJ's decision for three reasons: (1) the ALJ failed to afford proper weight to the opinion of Strouse's treating physician; (2) the ALJ failed to include all impairments supported by the record in formulating a hypothetical question for the VE; and (3) the ALJ failed to address relevant evidence of disability from other sources. Magistrate Judge Caracappa agreed with Strouse's second objection, but found no merit to his first and third objections. Strouse objects to the Report to the extent it affirmed the ALJ's rejection of treating psychiatrist Dr. Jeffrey Herman's Medical Source Statement. He further objects to the Report's conclusion Dr. Herman was the only medical source who diagnosed Strouse with Asperger's

---

[1] A "severe" impairment is defined as an "impairment or combination of impairments which significantly limits [the] physical or mental ability [of the claimant] to do basic work activities." 20 C.F.R. § 416.920(c).

syndrome. The Commissioner asserts Strouse's second objection is an invalid ground for remand.

In his first objection, Strouse contends the ALJ improperly rejected the opinion of Dr. Jeffrey Herman. Strouse argues Dr. Herman's opinion should have been afforded controlling weight because Dr. Herman was his treating physician, and his opinion is consistent with other medical evidence in the record.

Treating physicians' opinions are entitled to "great weight, especially when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999)). However, the ALJ may reject a treating physician's opinion if the opinion is inconsistent with other substantial evidence in the record. *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001); *see also Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991) (explaining that, where conflicting and internally contradictory evidence is presented, a treating physician's opinion may not be treated as controlling). An ALJ may afford the treating physician's opinion less than controlling weight, or even reject it, if the ALJ clearly explains her reasons for doing so. *Jones*, 954 F.2d at 129.

Dr. Herman found Strouse's impairments precluded him from completing a normal workday without interruptions and maintaining regular workplace attendance.[2] The findings of State Agency

---

[2] Dr. Herman opined Strouse had poor ability or no ability in the following areas: maintaining attention for a two hour time span; maintaining regular attendance and being punctual within customary workplace tolerances; completing a normal workday and workweek without interruptions from psychologically based symptoms; performing at a consistent pace without an unreasonable number and length of rest periods; getting along with co-workers or peers; dealing with normal stress; dealing with stress of semiskilled and skilled work; interacting appropriately with the public; and adhering to basic standards of neatness and cleanliness. Dr. Herman also found Strouse experienced marked restriction of activities of daily living, marked difficulties in maintaining social functioning, extreme deficiencies in concentration, persistence, or pace, resulting in failure to

Medical Examiner, Dr. Gavazzi differed from Dr. Herman's. Dr. Gavazzi found Strouse had no more than a moderate degree of difficulty in maintaining concentration, persistence, or pace, and only one episode of decompensation of extended duration.[3] In addition, Dr. Kohler found no evidence of depressive, psychotic, suicidal or homicidal thoughts; rather, Dr. Kohler determined Strouse had benzodiazepine and stimulant abuse or dependence, exacerbated by a developmental disorder which causes chronic anxiety, and difficulties with cognition, impulse control, and interpersonal engagement. A review of Strouse's medical records indicate most of his medical treatment focused primarily on drug or alcohol abuse, which supports Dr. Kohler's assessment.

Dr. Herman's Medical Source Statement opinion is also inconsistent with his treatment notes. When Dr. Herman first examined Strouse in February 2005, he noted Strouse had clear speech, a normal mood, and good cognition, insight, and judgment. Dr. Herman did not recommend hospitalization or inpatient treatment. The record indicates Dr. Herman advised conservative treatment, including medication and individual therapy. Moreover, Strouse reported to Dr. Herman that Strouse's medications increased his energy level and reduced his anxiety. Dr. Herman's treatment notes do not indicate Strouse's impairments preclude him from completing a normal workday and maintaining regular workplace attendance.

Strouse's testimony was also inconsistent with Dr. Herman's opinion. Strouse testified he

---

complete tasks in a timely manner, and one or two episodes of deterioration or decompensation.

[3] Episodes of decompensation are defined as "exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace." Disability Evaluation Under Social Security, Mental Disorders § 12.00 (C)(4).

7

lives alone, often uses the computer, does his laundry at the laundromat, goes out with friends for dinner, and visits the gym on a daily basis. Strouse testified he occasionally meets friends for coffee and goes to a sports bar. He also testified he participates in a fantasy baseball league and travels to Philadelphia every few weeks to visit with a friend. Taken together, Strouse's testimony is inconsistent with Dr. Herman's opinion that Strouse's impairments preclude him from completing a normal workday and maintaining regular workplace attendance. The Magistrate Judge found the ALJ did not err in rejecting Dr. Herman's opinion. This Court concludes the ALJ's decision to reject Dr. Herman's opinion was supported by substantial evidence.

Next, Strouse objects to the ALJ's failure to properly consider Dr. Herman's diagnosis of Asperger's syndrome. The Magistrate Judge correctly found no other medical source in the record supported this diagnosis. Furthermore, Dr. Herman did not initially diagnose Strouse with Asperger's. Instead, his treatment notes indicate Strouse first suggested he might have Asperger's, and Dr. Herman's diagnosis occurred after this suggestion. In weighing Dr. Herman's diagnosis of Asperger's, the ALJ properly considered other medical opinions in the record, none of which contain any discussion of Asperger's syndrome. When considered as a whole, Strouse's medical record and the record of medical professionals' opinions do not confirm the Asperger's diagnosis; rather, they show a diagnosis of major depressive disorder associated with drug and alcohol abuse. Thus, the ALJ's opinion is supported by substantial evidence.

Strouse further objects to the ALJ's decision to reject Dr. Herman's opinion because his opinion did not mention Strouse's substance abuse. Strouse argues the ALJ is under an obligation to recontact Dr. Herman and investigate why substance abuse was omitted from his opinion. Under 20 C.F.R. § 404.1512(e)(1), a treating physician will only be recontacted when evidence received

from the physician is inadequate to reach a determination. Here, the ALJ did not find Dr. Herman's report was inadequate; rather, she found the report was unsupported by other mental health sources. Additionally, an ALJ need not defer to a treating physician's opinion regarding the ultimate issue of disability. 20 C.F.R. § 404.1527(e). Here, the treating physician's opinion conflicted with other medical evidence, and the ALJ explained her reasons for rejecting it. Thus, this Court finds the ALJ's decision to reject Dr. Herman's opinion was supported by substantial evidence.

Regarding Strouse's second objection, the Magistrate Judge found merit to Strouse's contention the ALJ erred in not including all of Strouse's mental impairments in the hypothetical question posed to the VE, and recommended remanding this matter to address this issue. The Commissioner objects to the Magistrate Judge's finding, and asserts the ALJ's hypothetical question properly reflected all of Strouse's limitations.

During the fifth step of the evaluation process, the ALJ may pose a hypothetical question to a VE to determine what jobs the claimant is capable of performing given his impairments. *Rutherford*, 399 F.3d at 554 (3d Cir. 2005). The hypothetical question "must reflect all of a claimant's impairments supported by the record; otherwise the question is deficient and the expert's answer to it cannot be considered substantial evidence." *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987) (citations omitted). The hypothetical need not contain every impairment alleged by the claimant, but it must convey all credibly established limitations. *Rutherford*, 399 F.3d at 554.

Strouse contends the ALJ did not consider his moderate deficiencies in concentration, persistence, or pace. In a similar case, the Third Circuit found "a requirement that a job be limited to one to two step tasks, as was stated in the hypothetical relied upon by the ALJ, does not adequately encompass a finding that [petitioner] 'often' has deficiencies in concentration,

9

persistence, or pace." *Ramirez v. Barnhart*, 372 F.3d 546, 554 (3d Cir. 2004). The court concluded the ALJ should have taken the claimant's deficiencies in pace into account, explaining, "[m]any employers require a certain output level from their employees over a given amount of time, and an individual with deficiencies in pace might be able to perform simple tasks, but not over an extended period of time." *Id.* The court reasoned the VE may have changed her answer as to whether there were jobs in the local or national economy the claimant could perform if the hypothetical had included difficulties in maintaining concentration, persistence, or pace. *Id.* Because the hypothetical did not adequately convey all of Ramirez's impairments, the Third Circuit remanded his claim to the ALJ. *Id.* at 555.

At the October 20, 2005 hearing in the instant matter, the ALJ asked the VE to consider a hypothetical individual with the same age, education, and past work history as Strouse who is "confined to working at jobs that are simple, routine, one-to-two step task jobs, providing limited contact with the public and co-workers. And jobs that are low stress in nature." Transcript of Testimony at 586. The VE advised a hypothetical individual could not perform Strouse's past jobs, but could perform other jobs in the national and local economy. Following this, Strouse's attorney posed the same hypothetical, but added, "assume the judge would find credible [Strouse's] testimony with regard to his fatigue, that his operational mode . . . [is] no more than four hours." *Id.* at 587. The VE responded the hypothetical person would not be able to maintain full-time employment. Relying in part on the VE's testimony, the ALJ concluded Strouse was unable to perform his past work but could perform other jobs in the national economy.

Because the ALJ did not include Strouse's difficulties in maintaining concentration, persistence, or pace in the hypothetical question posed to the VE, this case is analogous to *Ramirez*.

In *Ramirez*, the petitioner "often" had difficulties maintaining concentration, persistence, or pace, whereas the RFC report for Strouse reflects "moderate" difficulties. The functional scale used to assess concentration, persistence, or pace was changed in 2000; however, both the old and new scales contain five degrees of limitation. *Colon v. Barnhart*, 424 F. Supp. 2d 805, 811 (E.D. Pa. 2006). "Moderate" is the third level of limitation on the new five-point functional scale. *Id.* "Often" occupied the third level of limitation on the prior functional scale. *Id.* Courts in this district have thus found "moderate" on the new scale and "often" on the old scale are equivalent, and this Court agrees for the purposes of this analysis. *See id.* (explaining the broad functional scale of concentration, persistence, or pace was changed in 2000 to make "moderate" equivalent to "often"); s*ee also Dynko v. Barnhart*, No. 03-3222, 2004 U.S. Dist. LEXIS 23301, at *5 (E.D. Pa. Nov. 16, 2004) (finding "often" and "moderate" fall on the same point on a five-point continuum, and therefore can be considered equivalent findings).

The Commissioner asserts the distinction between "moderate" and "often" is fatal to Strouse's claim, citing language in *McDonald v. Astrue*, 293 Fed. Appx. 941 (3d Cir. 2008). The *McDonald* court found the plaintiff had "moderate" deficiencies in concentration, persistence, or pace, and, in a footnote, noted the case was distinguishable from *Ramirez* because the claimant in *Ramirez* "often" had deficiencies in concentration, persistence, or pace. *Id.* at 947, n. 10. The *McDonald* opinion, however, did not address the change in the functional five-point scale used to assess concentration, persistence, or pace which was implemented after *Ramirez* was decided. Additionally, in *McDonald*, the lack of support for the plaintiff's claimed functional limitations was dispositive to his claim for benefits, not the distinction between whether the plaintiff suffered from

"moderate" deficiencies or "often" had deficiencies.[4] As this Court finds the *McDonald* case does not directly address the issue of the five-point functional scale, this Court will apply the *Ramirez* case's holding to Strouse's claim.

Thus, because the VE's answer did not reflect all of Strouse's credibly-established impairments, the hypothetical question posed by the ALJ was deficient, and the VE's answer to it cannot be considered substantial evidence. This Court agrees with the recommendation of the Magistrate Judge, and finds the matter should be remanded to the ALJ to properly include this information in the hypothetical question to the VE.

Finally, Strouse contends the ALJ erred by failing to address certain relevant evidence. Specifically, based on Social Security Rule (SSR) 06-03p, Strouse contends the ALJ was obligated to discuss a letter written by Strouse's disability advocate and caseworker at the Bucks County Assistance Office.

SSR 06-03p distinguishes between what an ALJ must consider and what an ALJ must discuss in an opinion. Under SSR 06-03p, the ALJ is not obligated to discuss evidence having no effect on the outcome of her decision. Here, the ALJ provided a clear, detailed explanation of all medical and opinion sources affecting her decision. As a result, the ALJ was under no obligation to discuss the caseworker's letter in her opinion. Accordingly, this Court finds the ALJ's decision not to discuss

---

[4]In *McDonald*, the plaintiff was struck in the head by a large box while shopping at a hardware store, and complained of injury to his spine and a mental disorder. *McDonald*, 293 Fed. Appx. at 946. The ALJ determined the record did not support the plaintiff's assertion that he had a disability and found "only minimal evidence of difficulties in concentration, persistence or pace." *Id.* at 945. The court found, "the record lacked any findings to support [plaintiff's] claimed functional limitations," and concluded, "the hypothetical posed to the vocational expert adequately reflected all of [the plaintiff's] impairments that had support in the record." *Id.* at 946.

Strouse's caseworker's letter was supported by substantial evidence.

An appropriate order follows.